**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 2:18-cr-61 (KSH) |
| v. |  |
| LAMONT WEST, | **OPINION** |
| *Defendant.* |  |

Before the Court is defendant Lamont West's motion to suppress evidence against him, specifically a gun, ammunition, and drugs located in a motel room that were seized by Newark police pursuant to a search warrant signed by a state court judge. West relies on *Franks v. Delaware*, 438 U.S. 154 (1978), for his argument that the police lied in the affidavit of probable cause upon which the warrant was issued.

## I.   Background

On Sunday morning, October 16, 2016, months before these federal charges were instituted, a shooting took place on the streets of Newark that left the male victim lying on the ground wounded. According to the police incident report (D.E. 34, Ex. 1), the assailant stopped his car in the middle of the street, shot at the victim three times from inside the car, got out and walked up to the victim and shot him four more times, then returned to the car and fled. The subsequent police investigation turned up an identification fairly soon: an eyewitness and the victim himself identified Lamont West as the shooter.

1

On Monday, October 17th, the police obtained an arrest affidavit for Lamont West. The Newark police major crimes unit was notified, and information was received that West was staying at the Hampton Inn and Suites one town over in Harrison. The Newark fugitive apprehension team was alerted, and they went to the Hampton Inn and noted a car fitting the description of West's car attempting to enter the hotel property. The car drove off, they followed and ultimately stopped it, identified the driver as Lamont West, arrested him, and secured the car.

Detectives from Newark major crimes went to the arrest scene. By this time West was seated in a police vehicle, and the detectives satisfied themselves that the identified shooter, West, was the person under arrest. One of the detectives, Lt. George, went over to West's car, which was in the process of being towed. Thereafter, George and the other detective, Lt. Cardona, went to the reception desk at the Hampton Inn and spoke to the person at the front desk, Edgar Acevedo.

Now comes the dispute. According to the government, George looked into West's car through a car window and saw a receipt from the Hampton Inn lying on the passenger seat reflecting a name, address, the room number 607, and a confirmation number – in short, a link between Lamont West and room 607. According to West, there was no receipt in the car. Rather, West claims, the police lied about the existence of a receipt in West's car in order to cover up a warrantless search of room 607 they undertook after they went to the reception desk and had Acevedo take them to room 607. Having searched the room, according to West, the police left the hotel and went

2

about obtaining a warrant to seize the contraband they knew was in room 607 through lies and deception, specifically by telling the state judge that they had reason to search room 607 because the receipt in West's car linked him to that room.

After his state arrest, West was indicted federally for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possessing with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and using and carrying a firearm in relation to the drug trafficking offense in count two, in violation of 18 U.S.C. § 924(c)(1)(A)(i).   (D.E. 14.)[1]   He was assigned CJA counsel, and an omnibus motion was filed (D.E. 29).

These federal charges against West derive from what was in room 607.  From the beginning, West has pressed one theory for his contention that evidence of the gun and drugs may not be used against him: the Newark police planted the receipt for room 607 in his car to cover up an initial "search" of his hotel room falsely characterized as a protective sweep, and therefore the warrant used to search his room a second time was based solely on a material misrepresentation.

West asserted this theory in the October 12, 2018 omnibus motion.  (D.E. 29, 36).  He claimed that the police lied about seeing the hotel receipt through the window of the car because, as he swore in his affidavit, he "did not possess in the vehicle at the

---

[1] The record on the within motion is not clear, but the Court is satisfied from a pending application for bail that there are no pending state charges against West arising from the shooting incident described above.

3

time of [his] arrest a receipt for Room #607 at the Hampton Inn and Suites[.]"  (D.E. 29-1, Ex. J.)  He therefore requested that the Court suppress the evidence obtained as a result of the search of his hotel room, or, in the alternative, grant an evidentiary hearing on the purported false statements made in the affidavit pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  (D.E. 29-1, Moving Br. 1, 10.)  West also requested all *Jencks* materials, "including but not limited to the statements of the Government witnesses who would be expected to testify regarding the statements made in the affidavit in support of [the search warrant],  probable cause to search Room #607, the search and photographing of the vehicle mentioned in the warrant, and the execution of the search warrant as to Room #607."  (*Id.* at 1-2.)  The government opposed. (D.E. 33.)

Finding that West had met his preliminary burden, the Court held a *Franks* evidentiary hearing over the course of four days: February 13, 2019, February 26, 2019, March 1, 2019, and March 14, 2019.  (D.E. 38, 41-45, 48-50.)  The government presented the following Newark police officers as witnesses: Sergeant James George (D.E. 42), Lieutenant Emil Cardona (D.E. 42, 45), Officer Iris Rivera (D.E. 45), Officer Gary Robinson (D.E. 45), and Detective John LaBella (D.E. 44), who wrote the probable cause affidavit presented to the state court based on information from George and Cardona.  The defense presented as witnesses two Hampton Inn employees who were working at the hotel during the events in question: Edgar Acevedo, the front desk manager (D.E. 44) and his associate, Briana Rivera. (D.E. 49).  Following the testimony,

the Court requested additional briefing (D.E. 52, 53, 56-58) and held oral argument. (D.E. 59, 61).

## II.   **Discussion**

The warrant clause of the fourth amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Supreme Court held in *Franks v. Delaware* that a defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause used by police to obtain a search warrant. 438 U.S. at 167-71. The Court therefore "created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

To obtain a so-called *Franks* hearing, however, the defendant must first make a "substantial preliminary showing" that the affidavit contained a false statement or omission that "(1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause." *United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019) (citing *Franks*, 438 U.S. at 155-56); *see also Yusuf*, 461 F.3d at 383. If, after the hearing, the defendant establishes these same elements by a preponderance of the evidence, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155.

The Supreme Court in *Franks* did not give "guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocence mistake is insufficient.'" *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979)). In *Wilson*, the Third Circuit developed the following standard to determine what constitutes a "reckless disregard for the truth" with respect to misstatements and omissions:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Id.* at 783.

A misleading assertion may relate to even "minor details," as "recklessness is not measured by the relevance of the information, but the demonstration of willingness to affirmatively distort the truth." *Id.* at 788. The Third Circuit "borrowed from the free speech arena and equated reckless disregard for the truth with a 'high degree of awareness of [the statements'] probable falsity.'" *Id.* (quoting *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993)).

Ultimately, however, the defendant must also "must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the original probable cause finding."

*Yusuf*, 461 F.3d at 383 (citing *Wilson*, 212 F.3d at 788). For the purposes of determining whether the deficiencies in an affidavit are material or necessary to a finding of probable cause, the Court evaluates misrepresentations differently from omissions. *Id.* at 383-84. Where the affidavit contains an affirmative misrepresentation, the court excises the false statement from the affidavit. If the affidavit did not contain certain information, the court removes the falsehood by supplying the omitted information to the original affidavit. *Id.* at 384. If the defendant meets his burden, then the fourth amendment "requires that . . . the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1999) (quoting *Franks*, 438 U.S. at 156).

The Court therefore must first determine whether West has established by a preponderance of the evidence that the affidavit submitted to Judge Teare contained a false statement that was made knowingly and intentionally, or with reckless disregard for the truth. In support of his claim that the hotel receipt was not sitting face-up, unobstructed on the front passenger seat of his car at the time of the arrest – that in fact there was no receipt in the car at all – West relies heavily on the testimony of Hampton Inn front desk manager, Edgar Acevedo. Acevedo testified as to the hotel's general policies and procedures regarding checking in and printing receipts as well as his past encounters with West, but, significantly, he could not clearly recall the details of his interactions with the police, West, or West's companion, Leticha Williams, on October 16th and 17th.

7

Acevedo testified that hotel receipts are not automatically generated when a guest checks in to the Hampton Inn.  (D.E. 44 (3/1/2019 Transcript), at 142:4-9).  Instead, if and when a guest checks out at the front desk, the hotel clerk asks the guest if he would like a copy of his receipt.  (*Id.* at 142:18-143:5.)  Acevedo also confirmed what the security footage already showed—that he did not provide West with a receipt when he checked in on October 16th.  (*Id.* at 138:25-139:18.)  He further testified that he could not recall, but did not think, that he had ever provided West a receipt upon check-in in the past.  (*Id.* at 140:3-7.)  He indicated that cash-paying guests, like West, usually do not take a receipt upon check-in, and further noted that many people forego a receipt because they wish to keep a low profile.  (*Id.* at 140:3-141:7.)  In the same vein, he stated that he sometimes made up addresses for guests who prefer to keep their personal information private—and that may have been the case with the fake address on the receipt for room 607.  (*Id.* at 238:3-20.)

Acevedo's testimony regarding his interactions with the police at the front desk was significantly uninformative.  He testified that when the police confronted him about finding West's room, he "believe[d] they were trying to find out . . . what the room number was," as opposed to confirming a number they already had.  (*Id.* at 153:5-18.)  And although he recalled the police showing him a picture of West, he could not say for certain whether he gave them West's room number.  (*Id.* at 232:2-233:6.)  While he remembered searching in the hotel's computer system for information for the police, he was unsure whether he recalled West's room from memory or looked it up or

8

whether the room was under West's or Williams's name.  (*Id.* at 233:14-234:10.)
Although Acevedo noted that on other occasions he had given registration cards or
receipts to officers when they asked, he could not recall whether officers had requested
a printed-out receipt from him on October 17th.  (*Id.* at 158:11-160:8.)

Acevedo testified that the receipt for room 607 received in evidence appears to
have been printed on October 17th, the day after West initially checked in and the same
day the search was executed.  (*Id.* at 236:5-24.)  However, he could not say whether he
gave a receipt to West or Williams—upon payment, checking out, or otherwise.  And
again, he also could not recall printing a receipt for the officers, nor could he remember
if they had even asked him to do so.  (*Id.* at 231:10-17.)  He was, in effect, unable or
unwilling to weigh in on the origin of the printed receipt.

The defense also presented as a witness Briana Rivera, another Hampton Inn
employee working during the events in question.  Although she corroborated much of
what Acevedo said, and thus further contributed to West's speculation about who this
receipt was printed for, her testimony does not affirmatively substantiate any of West's
claims.  Nor does it discredit the physical evidence and testimony of the police officers
working the incident.  For example, she testified that she had checked in West on prior
occasions and did not recall giving him a receipt; however, she could not confirm
whether West or Williams had been provided with a receipt on the date in question.
(D.E. 50 (3/14/2019 Transcript), at 11:13-24; 17:4-15.)  She also noted that the hotel's

policy is to ask someone if they would like a printed or emailed receipt when they check out.  (*Id.* at 12:11-18.)

It must be remembered that West's motion is completely dependent on proving that the hotel receipt was not on the front seat of West's car, as the police testified it was.  (*See* Moving Br. 8 ("If the false statements regarding the Room #607 receipt are excised from the affidavit, [it] provides no link between Mr. West and Room #607 and therefore does not make a showing of probable cause to search that location under the totality of the circumstances test.").)  Acevedo's and Rivera's testimony simply does not provide the facts necessary to demonstrate that the Newark police conspired together and made false statements about the receipt in the probable cause affidavit.

Furthermore, Acevedo's testimony does not establish that an employee of the Hampton Inn gave the police a copy of the receipt, which is essential to West's version that the police planted it in his car.  Neither, for that matter, does West demonstrate that no Hampton Inn employee ever printed a receipt for West or his companion, Williams.  Acevedo's testimony therefore sheds very little light on what actually happened.  That West did not ask for a receipt on prior occasions is not enough to overcome his burden, particularly because the receipt printed on October 17th was in Williams's name.  And under the facts adduced, only Acevedo or Rivera could contradict police testimony – reasserted under oath during the hearing before this Court – that there was a receipt in West's car.  To the frustration of counsel, Acevedo frequently stated that he could not recall one way or the other as to critical events—

10

remarking at one point that, "anything is possible." And so the defense case ultimately rests on challenges to credibility and building inference upon inference, which is insufficient for West to meet his burden under *Franks* and prove that it is more likely than not that the police lied and there was no receipt on the passenger seat of his car linking him to room 607.

The Court granted a *Franks* hearing in part based on inconsistencies between the physical evidence and the government's narrative. For instance, West argued that the fact that Officer Robinson's property evidence report did not list the hotel receipt as an inventoried item was an "extraordinary incongruity." (Moving Br. 3, 7; D.E. 29, Ex. G (Property Evidence Report).) And at the *Franks* hearing, Det. LaBella stated that he "secured" the receipt for himself after it was photographed by Officer Robinson because he was going to "need it for further investigation" and would not have to "keep submitting it, [and] re-submitting it" as evidence; instead, it "stayed with the file." (D.E. 45 (2/26/19 Transcript), at 199:7-22.)

Importantly, however, these discrepancies, together with Acevedo's testimony, must be reviewed in the context of the entire record. Nothing presented to this Court contradicts Sgt. George's sworn testimony that the receipt was visible on the front seat of West's car when he was arrested, as stated in the affidavit. (D.E. 42 (2/13/19 Transcript), at 32:16-22; 33:2-22.) Sgt. George's testimony does not stand alone; it was corroborated by Lt. Cardona, who recalled Sgt. George looking into the vehicle and seeing the receipt (*id.* at 171:23-172:5), Officer Rivera, who independently saw what

11

looked like a receipt sitting on the seat of the car before it was towed (2/26/19 Transcript, at 89:4-16), and Det. LaBella, who testified that Sgt. George provided him with the specific information about the receipt which he put into the affidavit and who stated he had no reason to doubt that Sgt. George was telling the truth. (Id. at 167:25-168:5, 203:15-17.)  The receipt also appears in the pictures taken by Officer Robinson the day after the arrest (D.E. 34).  Though in the photographs the face of the receipt is somewhat obscured by other items on the passenger seat, Officer Rivera testified that when a car is towed, it gets "tilted." (*Id.* at 92:9-23.) The Court acknowledges that West's efforts may raise skepticism, depending upon one's point of view,  about the events of October 16th, but he has not shown by a preponderance of the evidence that the police knowingly or intentionally lied or acted with reckless disregard for the truth.  It appears that to rule in his favor, the Court would have to credit lay witness Edgar Acevedo with what he was unwilling to swear to unequivocally and reject sworn police testimony solely because Acevedo is not police and police are police.   The Court declines to do that.

Put more directly:  West doesn't have the argument of reasonable doubt as to what the police said or did so as to weaken the government's proofs.  Here West has the burden; West has to prove by a preponderance his version of what happened in order to topple the legitimacy of the search.  The goal is a difficult one to achieve because *Franks* is narrow in its scope and miserly in the relief it offers.

Having ruled that West has not proven that the police made a false statement in the probable cause affidavit, the Court need not address the next step of the *Franks* analysis, whether the statement about the receipt in the affidavit was material to the original probable cause finding. Nor need the Court weigh in on what became a source of contention in the post hearing argument, whether a purportedly inevitable discovery of the contraband in room 607 would vitiate any impropriety. West has been consistent throughout: no receipt in his car meant no probable cause to search room 607 and find contraband that led to this indictment. He failed to prove there was no receipt in his car either by direct or circumstantial evidence or demonstrating that the police version of events cannot be believed. Arguably, he failed to prove that the receipt in and of itself was material to the police getting initial access to room 607 – Acevedo's fuzzy recall could encompass a simple exchange whereby he confirmed he recognized West from his picture and had registered him in room 607. Accordingly, the Court denies West's motion to suppress.

### III.   <u>Conclusion</u>

For the foregoing reasons, West's motion is denied. An appropriate order will follow.


                                                    /s/ Katharine S. Hayden
Date: November 23, 2020                             Katharine S. Hayden, U.S.D.J.